UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                          :
NEW YORK HOTEL & MOTEL TRADES                             :
COUNCIL, AFL-CIO,                                         :
                                                          :
                                    Petitioners,          :         21 Civ. 5844 (PAE)
                                                          :
                       -v-                                :         OPINION & ORDER
                                                          :
LIFE HOTEL ONE LLC ET AL.,                                :
                                                          :
                                    Respondent.           :
                                                          :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

      Plaintiff—the New York Hotel and Motel Trades Council, AFL-CIO (the "Union")—

seeks confirmation of an arbitral award issued against respondent Life Hotel a/k/a Luxe Life

Hotel New York (the "Hotel"). *See* Dkt. 1 ("Pet."). The Hotel is a joint employer with Life

Hotel One LLC, Flabla LLC, Life Hotel TIC LLC, Liliha Herald TIC LLC, and Luxe Life

Management, Inc, who are each named as respondents alongside the Hotel. Pet. ¶ 8–12. The

Hotel employed some of the Union's members and was subject to a collective bargaining

agreement with the Union. *Id.* ¶ 5; Dkt.1-2 ("CBA"). When it permanently closed amid an

industry downturn brought on by the COVID-19 pandemic, the Hotel failed to honor certain

obligations to those Union employees under the CBA, leading the Union to commence arbitral

proceedings against it. The Union now sues under section 301 of the Labor Management

Relations Act ("LMRA"), 29 U.S.C. § 185, seeking an order confirming the Award, ordering

compliance with it, and granting the Union pre-judgment interest, and post-judgment interest.

For the following reasons, the Court grants the Petition.

## I.     Background[1]

### A.     The Parties

Plaintiff New York Hotel and Motel Trades Council, AFL-CIO (the "Union") is a labor organization within the meaning of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 152(5).  Pet ¶ 3.  The Union represents nearly 40,000 workers employed in the hotel, hospitality, and gaming industries in New York State and Northern New Jersey, with its principal office in New York City.  *Id.* ¶ 4.

The Hotel is located at 19 West 31st Street, New York, New York 10001, and is an "employer" within the meaning of 29 U.S.C. § 152.  *Id.* ¶ 7.  The Hotel is under common ownership and control with Life Hotel One LLC, Flabla LLC, Life Hotel TIC LLC, Liliha Herald TIC LLC, and Luxe Life Management, Inc.  *Id.* ¶ 6–12.  According to the unopposed Petition, each entity is New York-based; owns, operates, and/or manages the Hotel; and is an "employer" within the meaning of 29 U.S.C. § 152.  *Id.*  The Hotel has a CBA with the Union.  *Id.*; *see also* Dkts. 1-2,-3.

### B.     The Collective Bargaining Agreement

Terms and conditions of employment for workers represented by the Union for hotels and residences within the five boroughs of New York City are negotiated and governed by the Division A CBA between the Union and the Hotel Association of New York City, Inc.  Pet ¶ 5; *see also* CBA, Dkt.1-3.  In relevant part, the CBA provides for a living wage (Article IX and Schedule A), comprehensive healthcare (Article XVI), a secure retirement (Article XVII and XVIII), and severance pay with continued healthcare coverage in the case of a hotel closing (Article XXII and XXIV).  Pet. ¶ 13; CBA.

---

[1] The following undisputed facts are derived from the Petition, Dkt. 1 ("Pet.") and the exhibits attached thereto, and petitioner's memorandum of law, Dkt. 1-8.

Article XXIII, Closings, provides:

> If an Employer closes its establishment, makes major alterations necessitating the layoff of any employees, or sells, leases or transfers the establishment, it shall notify the Union at least thirty (30) days before such closing, alteration, sale, lease, or transfer. The Employer shall be responsible for all wages and other benefits, including contributions to the Pension and Welfare Funds, provided under this Agreement for no less than. thirty (30) days after it notifies the Union.

Article XXIV, Severance, provides:

> Employees who are permanently laid off for any reason, including automation, construction or closing of the establishment, shall receive severance pay as follows: 1. Employees with one (1) to five (5) years of employment shall receive four ( 4) days of pay for each year of employment; and
> 2. Employees with greater than five (5) years of employment shall receive five (5) days of pay for each year of employment.  In addition, the Employer shall contribute one (1) day of pay for each year of employment to the Health Benefit Fund for employees with one (1) to five (5) years of employment and two (2) days for each year of employment to the Health Benefit Fund for employees with greater than five (5) years of service.

> Article VII mandates that all disputes between the parties be resolved by the Impartial

Chairperson, a permanent industry arbitrator:

> All complaints, disputes or grievances arising between the parties hereto involving questions or interpretation or application of any, clause of this Agreement, or any acts, conduct or relations between the parties, directly or indirectly, which shall not have been adjusted by and between the parties involved shall be referred to a permanent umpire(s) to be known as the Impartial Chairperson, and his/her decision shall be final and binding upon the parties hereto.  Any questions regarding arbitrability, substantive, procedural, or otherwise, or regarding the Impartial Chairperson's jurisdiction or authority, shall be submitted to the Impartial Chairperson in accordance with this Article.

> For employees in New York City, the Industry Wide Agreement between the Union and

Hotel Association ("IWA") at Article 26(A), contains an identical arbitration provision as above.

Pet. ¶ 18.

### C.    The Arbitration and the Arbitration Award

On or about March 20, 2020, in response to the COVID-19 pandemic, the Hotel closed,

and permanently laid off its Union-represented employees.  Pet. ¶ 20–21.  To date, the Hotel has

not reopened. *Id.* ¶ 21. Following its closure, the Hotel did not make payments to its terminated Union employees, pursuant to the CBA, and did not make health benefit fund contributions on their behalf. *Id.* ¶ 22. On January 21, 2021, the Union demanded arbitration against the Hotel for its failure to pay severance pursuant to Article XXIV of the CBA. Dkt. 1-4.

A hearing was held on February 3 and February 22, 2021, at which counsel for the Union and the Hotel presented their respective positions. Pet. ¶ 24.

On March 4, 2021, Impartial Chairperson, Phillip J. Kellett ("Kellett") issued the Award, to which both parties had consented. Dkt. 1-6 ("Award") at 2. Kellett noted that "there were no facts in dispute," including that "the Hotel does not dispute the identity or amounts of severance and other payments owed in respect of the Hotel's employees." *Id.* at 1. Kellett further found that the Hotel's breach was "willful," because it had failed to avail itself of any legally recognizable method of avoiding these payments, such as declaring bankruptcy. Award at 2. Accordingly, Kellett determined that the Hotel must pay a 15% penalty on the amounts demanded by the Union. Award at 2.

The Award consisted of the following:

The Hotel shall immediately pay all weekly bridge severance payments, retroactive to October 1, 2020. If it chooses, the Hotel may instead pay lump sum payments, with 15% penalty, as detailed on the attached spreadsheet, in the amounts of $423,023.27 in wages, $168,561.27 to the Health Fund, plus 15% penalty of $88,737.68, for a total of $680,322.22 with amounts to individuals detailed in the attached spreadsheet;

The Hotel shall pay the contributions to the Health Fund as required under Division A CBA Article XXIV;

If the Hotel chooses to make bridge payments it shall prepare and forward to the Union all calculations of the weekly bridge payments within five (5) days;

The Hotel shall provide all the payroll information requested in the Union's Subpoena Duce Tecum; and

4

The Impartial Chairperson shall retain jurisdiction to resolve any disputes between the parties.

**D.    This Action**

On July 7, 2021, plaintiff filed a petition to confirm the Award, Dkt. 1, along with attached exhibits, Dkt. 1-1–7, and a supporting brief, Dkt. 1-8. Plaintiff asserted that to date, the Hotel has failed to comply with the Award, and no payment has been remitted to it. Pet. ¶ 27. Respondents' answers were due August 6, 2021. *See* Dkts. 6–13. To date, none of the respondents have opposed this petition or otherwise appeared in this case.

**II.    Discussion**

**A.    Legal Standards**

Arbitral awards are not self-enforcing. Rather, they "must be given force and effect by being converted to judicial orders by courts." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006).

The Federal Arbitration Act provides a "'streamlined' process for a party seeking 'a judicial decree confirming an award.'" *Salzman v. KCD Fin., Inc.*, No. 11 Civ. 5865 (DLC), 2011 WL 6778499, at *2 (S.D.N.Y. Dec. 21, 2011) (quoting *Hall St. Assocs. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008)). "Normally, confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court, and the court must grant the award unless the award is vacated, modified, or corrected." *D.H. Blair*, 462 F.3d at 110 (citation omitted). In this Circuit, "[t]he showing required to avoid summary confirmation of an arbitration award is high . . . ." *Willemijn Houdstermaatschappij, BV v. Standard Microsys. Corp.*, 103 F.3d 9, 12 (2d Cir. 1997); *see Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003) ("It is well established that courts must grant an [arbitrator's] decision great deference."). That deference is especially appropriate

for arbitral awards rendered in the labor context: "[A] federal court's review of labor arbitration awards is narrowly circumscribed and highly deferential—indeed, among the most deferential in the law." *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 532 (2d Cir. 2016); *id.* at 536 (noting the LMRA's "particular emphasis on private arbitration of grievances" as means of "promoting industrial stabilization" (citation omitted)).

Review of an arbitral award by a district court thus "is 'severely limited' so as not unduly to frustrate the goals of arbitration, namely to settle disputes efficiently and avoid long and expensive litigation." *Salzman*, 2011 WL 6778499, at *2 (quoting *Willemijn*, 103 F.3d at 12). Indeed, "an arbitration award should be enforced, despite a court's disagreement with it on the merits, if there is 'a barely colorable justification for the outcome reached.'" *Landy Michaels Realty Corp. v. Local 32B-32J, Serv. Emps. Int'l Union*, 954 F.2d 794, 797 (2d Cir. 1992) (quoting *Andros Compania Maritima, S.A. v. Marc Rich & Co.*, 579 F.2d 691, 704 (2d Cir. 1978)).

Courts evaluate a motion to confirm an arbitral award against a party that has failed to oppose the motion under the legal standards applicable to a motion for summary judgment. *See D.H. Blair*, 462 F.3d at 109–10. To prevail on such a motion, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making this determination, the court must view all facts "in the light most favorable" to the non-moving party. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (citations omitted). In determining whether there are genuine issues of material fact, the court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

"Even when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004); *see also Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001). In reviewing an unopposed motion for confirmation of an arbitration award,

> a court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial. If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied *even if no opposing evidentiary matter is presented.*

*D.H. Blair*, 462 F.3d at 110 (emphasis in original) (quoting *Vt. Teddy Bear Co.*, 373 F.3d at 244). Where "[t]here is no indication that the arbitration decision was made arbitrarily, exceeded the arbitrator's jurisdiction, or otherwise was contrary to law . . . a court must grant an order to confirm an arbitration award upon the timely application of a party." *Herrenknecht Corp. v. Best Rd. Boring*, No. 06 Civ. 5106 (JFK), 2007 WL 1149122, at *2 (S.D.N.Y. Apr. 16, 2007).

**B.    Confirmation of the Arbitration Award**

On the basis of the Award, and on the very limited review that is appropriate, the Court finds that summary judgment is warranted, as petitioners have shown there is no material issue of fact in dispute. The Impartial Chairperson, Kellett, acted within the scope of the authority granted him by the parties. *See, e.g.*, CBA Art. VII. Kellett found that "it was undisputed that the Hotel permanently closed at the end of March 2020" and further that "the Hotel does not dispute the identity or amounts of severance and other payments owed in respect of the Hotel's employees," including seven employees that had been laid off in January 2020. Award at 1–2. The substance of the Award was consented to by both parties. Award at 2.

Based on the complete lack of factual dispute noted in the Award, the Court concludes that there is at least a "barely colorable justification for the outcome reached," and by all

7

indications a more than colorable one. *Landy Michaels Realty Corp.*, 954 F.2d at 797.

Accordingly, the Court confirms the Award in favor of petitioner, in the amounts of $423,023.27

in wages, $168,561.27 to the Health Fund, plus 15% penalty of $88,737.68, for a total of

$680,322.22.

### C.    Pre-Judgment Interest

The Union also seeks pre-judgment interest. *See* Pet. at 9. "New York law provides for

prejudgment interest running from the date of an arbitration award until the entry of final

judgment." *Finger Lakes Bottling Co. v. Coors Brewing Co.*, 748 F. Supp. 2d 286, 292

(S.D.N.Y. 2010); *see also In re Arbitration Between Westchester Fire Ins. Co. v. Massamont Ins.*

*Agency, Inc.*, 420 F. Supp. 2d 223, 227 (S.D.N.Y. 2005) ("[A]n arbitration award confirmed

under the FAA bears interest from the date of the award until judgment confirming it." (citation

omitted)). The Court therefore grants the Union pre-judgment interest calculated from the date

of the Final Award until the entry of judgment. *See* Pet. at 9. In accord with "the common

practice among the courts of this Circuit," the Court "set[s] the interest rate at 9%." *N.Y. City*

*Dist. Council of Carpenters Pension Fund v. E. Millenium Const., Inc.*, No. 03 Civ. 5122 (DAB),

2003 WL 22773355, at *3 (S.D.N.Y. Nov. 21, 2003); *see N.Y. City Dist. Council of Carpenters*

*v. Metro Furniture Servs. LLC*, No. 11 Civ. 7074 (HB), 2012 WL 4492384, at *3 (S.D.N.Y.

Sept. 28, 2012) ("[T]he common practice among courts within the Second Circuit is to grant

interest at a rate of 9%, the rate of prejudgment interest under New York State law." (citation

omitted)). Accordingly, the Court grants pre-judgment interest of 9% on the total amount of the

Award, $680,322.22, from the date of the Award, March 4, 2021.

### D.    Post-Judgment Interest

The Union also seeks post-judgment interest. *See* Pet. at 9. Such interest "shall be

allowed on any money judgment in a civil case recovered in a district court . . . at a rate equal to

8

the weekly average 1-year constant maturity Treasury yield, as published by the Board of

Governors of the Federal Reserve System, for the calendar week preceding" the date of the

judgment. 28 U.S.C. § 1961(a). Awards of post-judgment interest under § 1961 are mandatory.

*See Cappiello v. ICD Publ'ns, Inc.*, 720 F.3d 109, 113 (2d Cir. 2013) (collecting cases). An

order confirming an arbitral award is to be "docketed as if it was rendered in an action," and a

judgment in an arbitration must "have the same force and effect, in all respects, as, and be

subject to all the provisions of law relating to, a judgment in an action; and it may be enforced as

if it had been rendered in an action in the court in which it is entered." 9 U.S.C. § 13. Thus, § 1961

applies to actions to confirm arbitral awards. *See, e.g.*, *Westinghouse Credit Corp. v. D'Urso*,

371 F.3d 96, 100–01 (2d Cir. 2004) (awarding post-judgment interest in an arbitration case).

The Court therefore also awards interest to accrue from the date judgment is entered until

respondents satisfy their payment obligations.

## CONCLUSION

For the reasons stated above, the Court confirms the Award in favor of plaintiff and

issues judgment in the amount of $680,322.22, plus prejudgment interest of 9% from the date of

the Award—March 4, 2021—through the date of this judgment, plus post-judgment interest.

The Clerk of Court is respectfully directed to close this case.

SO ORDERED.

_____
PAUL A. ENGELMAYER
United States District Judge

Dated: December 16, 2021
         New York, New York